# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 22, 2023        Decided June 7, 2024

No. 22-1220

FEDERAL EDUCATION ASSOCIATION STATESIDE REGION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of Decisions
of the Federal Labor Relations Authority

———

*Richard J. Hirn* argued the cause for petitioner. With him on the briefs were *Benjamin Hunter* and *Suzanne E. Summerlin*.

*Thomas Tso*, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. On the brief were *Rebecca J. Osborne*, Acting Solicitor, at the time the brief was filed, and *Nariea K. Nelson*, Attorney.

Before: HENDERSON and RAO, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Federal Service Labor-Management Relations Statute (Statute), 5 U.S.C. §§ 7101–7135, "grants federal agency employees the right to organize, provides for collective bargaining, and defines various unfair labor practices." *Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 783 (D.C. Cir. 2010). Every federal agency must meet and negotiate in good faith with the chosen representative of employees covered by the Statute. 5 U.S.C. § 7114(a)(4); *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 644 (1990). If a federal agency or labor organization fails "to consult or negotiate in good faith" with its counterpart, it commits a statutory unfair labor practice (ULP). 5 U.S.C. § 7116(a)(5) and (b)(5).

Section 7119 of the Statute established the Federal Service Impasses Panel (FSIP or Panel) within the Federal Labor Relations Authority (FLRA or Authority) to "provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1). The FSIP "serves as a mechanism of last resort in the speedy resolution of disputes, after negotiations have failed." *Council of Prison Locs. v. Brewer*, 735 F.2d 1497, 1501 (D.C. Cir. 1984). Both the agency and the labor representative may request FSIP assistance. 5 U.S.C. § 7119(b)(1). The FSIP "investigate[s] any impasse presented to it," *id.* § 7119(c)(5)(A), and offers recommendations and assistance before "tak[ing] whatever action is necessary and not inconsistent with this chapter to resolve the impasse," *id.* § 7119(c)(5)(B)(iii). It can impose a contract provision that is then considered part of the collective bargaining agreement (CBA). *Am. Fed'n of Gov't Emps.* (*AFGE*)*, Locs. 225, 1504, and 3723 v. FLRA*, 712 F.2d 640, 646 n.24 (D.C. Cir. 1983). Any final action of the FSIP "shall be binding on such parties during the term of the agreement, unless the parties agree

otherwise." 5 U.S.C. § 7119(c)(5)(C). An agency or labor organization commits a ULP by "fail[ing] or refus[ing] to cooperate in impasse procedures and impasse decisions." *Id.* § 7116(a)(6) and (b)(6). An FSIP-imposed agreement is "subject to approval by the head of the agency." *Id.* § 7114(c)(1). The agency head has 30 days from the date of the agreement's execution to approve or disapprove. *Id.* § 7114(c)(2). If the agency head does not approve or disapprove within 30 days, "the agreement shall take effect and shall be binding." *Id.* § 7114(c)(3).

The Statute creates a two-track labor dispute resolution system. *Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 62 (D.C. Cir. 1987). On one track, either party alleging a ULP under Section 7116 can file a charge with the Authority's General Counsel, who then investigates. 5 U.S.C. § 7118(a). If the General Counsel issues a complaint, the Authority holds a hearing and provides any appropriate relief. *Id.* § 7118(a)(6)–(8). On the other track, under a CBA's required "procedure[] for the settlement of grievances," either party can invoke "binding arbitration" if grievance negotiations fail. *Id.* § 7121(a)(1), (b)(1)(C)(iii). "An aggrieved party may elect either track—the statutory complaint procedure or binding arbitration—but not both." *U.S. Dep't of Navy v. FLRA*, 665 F.3d 1339, 1344 (D.C. Cir. 2012).

In this petition for review, Federal Education Association Stateside Region (FEA-SR), a teachers' union, challenges the FLRA's decision to set aside an arbitration award in FEA-SR's favor on the ground that the arbitrator lacked authority to review a contested Panel order. FEA-SR contends that the FLRA erred by failing to defer to the arbitrator's factual findings, by foreclosing arbitration regarding the Panel order and by disregarding the parties' agreement that both parties' signatures are required to "execute" the CBA. The FLRA, in

turn, argues that we lack jurisdiction of the petition for review. In the alternative, the FLRA contends that FEA-SR is wrong on the merits. We hold that we have jurisdiction of the petition because the FLRA's decisions sufficiently "involve[] an unfair labor practice." 5 U.S.C. § 7123(a)(1). On the merits, however, we reject FEA-SR's claims and, accordingly, deny the petition for review.

## I. BACKGROUND FACTS

In 2005, FEA-SR entered a CBA with the U.S. Department of Defense, Domestic Dependent Elementary and Secondary Schools (DDESS). In 2010, the parties began negotiating a new agreement. They established ground rules for the negotiations, including that agency head review would occur only after formal execution; that is, after both parties had signed the agreement. Another ground rule permitted re-opening any previously agreed-upon sections until the parties reached agreement on an article as a whole. The parties reached agreement on several articles, including Article 11 on Health and Safety. Section 5 of Article 11 allows DDESS to extend the work year or reschedule days previously set aside for non-instructional activity in the event of school closures. Employees are to be compensated for "days required to be made up beyond the work year requirements as described in Article 18." J.A. 357.

In 2018, the parties reached an impasse in their bargaining and DDESS sought the assistance of the FSIP. The FSIP helped the parties reach agreement on nearly 30 issues, including workday length set forth in Article 18, Section 1. The FSIP then issued an order resolving the remaining issues. *Dep't of Def. Educ. Activity Domestic Dependent Elementary & Secondary Schs.*, 18 F.S.I.P. 073 (2018). One outstanding issue involved Article 18, Section 3(f). DDESS proposed that within the 190-

day work year, rescheduled workdays—due to inclement weather or other emergencies—would trigger no additional compensation. FEA-SR offered no counterproposal and instead argued that Article 11 already guaranteed additional compensation for rescheduled days. According to FEA-SR, the parties were not at impasse on the issue and thus the FSIP lacked jurisdiction to resolve it. The FSIP found no conflict between the articles: Article 18 covers rescheduled days within the 190-day work year and Article 11 provides additional compensation for days beyond the 190-day work year. The FSIP then adopted DDESS's proposal: no additional compensation for rescheduled days within the 190-day work year.

After the FSIP issued its order, the parties continued discussing a four-word change to Article 22. On February 11, 2019, DDESS informed FEA-SR that the agreement had taken effect on January 11, 2019, when the agreement was approved through the Department of Defense's agency head review process.[1] FEA-SR protested that it had not signed the agreement and therefore no execution had occurred under the parties' ground rules. FEA-SR then filed an arbitral grievance claiming DDESS's submission of the agreement for agency head review without FEA-SR's signature violated the contractual ground rules and constituted bad faith bargaining under Section 7116(a)(5). It filed a second grievance alleging that DDESS's implementation of the agreement without signatures repudiated the earlier CBA and also constituted bad faith bargaining under Section 7116(a)(5). It reasserted its claim that the FSIP lacked jurisdiction of Article 18. It acknowledged that its refusal to implement the FSIP's impasse

---

[1] An agency head may delegate his authority to review a CBA. *Fort Bragg Ass'n of Teachers*, 44 F.L.R.A. 852, 855 (1992). DDESS delegated agency head review to the Defense Civilian Personnel Advisory Service.

decision could constitute a ULP under Section 7116(b)(6) but took the risk in order to challenge the FSIP's jurisdiction.

The arbitrator concluded that DDESS had committed unfair labor practices by cutting negotiations short and submitting an unexecuted agreement for agency head review. These two actions, he found, repudiated the earlier CBA and constituted bad faith bargaining. He also determined that Article 18, Section 3(f) was merely a permissive bargaining subject because it conflicted with the already agreed-to Article 11, impliedly placing it beyond FSIP jurisdiction. He then reinstated the 2005 CBA as a remedy.

DDESS excepted to the arbitration award and FEA-SR filed an opposition thereto. The FLRA set aside the arbitrator's award. *U.S. Dep't of Def. Domestic Dependent Elementary & Secondary Schs.* (*DOD I*), 72 F.L.R.A. 601 (2021). It first found that the arbitrator could not review whether or not the FSIP had jurisdiction of the Article 18 issue. *Id.* at 603. Because an FSIP order is "binding" under the Statute, *id.*; 5 U.S.C. § 7119(c)(5)(C), an arbitrator may review an FSIP order only if (1) Party A charges Party B with noncompliance with an FSIP order—a ULP under Section 7116(a)(6) and (b)(6)— and (2) Party B then challenges the FSIP order's legality (including jurisdiction as well as the merits) as a defense. *DOD I*, 72 F.L.R.A. at 603; *see State of New York*, 2 F.L.R.A. 185, 188 (1979). DDESS did not charge FEA-SR with a ULP based on noncompliance and so the arbitrator improperly ruled on FEA-SR's challenge to the FSIP's jurisdiction. *DOD I*, 72 F.L.R.A. at 603. For the same reason, the arbitrator erroneously reviewed the FSIP's interpretations of Articles 11 and 18. *Id.* Next, the Authority concluded that DDESS's submission of the agreement for agency head review complied with Section 7114(c). *Id.* at 604. Because the FSIP order resolved all outstanding issues at impasse, the agreement was "executed"

when the FSIP issued its order. *Id.* Thus, DDESS properly submitted the executed agreement for agency head review. *Id.* at 605.

FEA-SR moved for reconsideration but was unsuccessful. *U.S. Dep't of Def. Domestic Dependent Elementary & Secondary Schs.* (*DOD II*), 73 F.L.R.A. 149 (2022). In its denial, the FLRA iterated the proper procedure—under either track—to challenge an FSIP order: (1) Party A charges Party B with non-compliance with a Panel order and (2) Party B then challenges the order's legality. *Id.* at 150. It also concluded that Article 22 did not constitute an unresolved bargaining issue because FEA-SR failed either to raise it before the arbitrator or to file a timely exception to the award. *Id.* at 152.[2]

FEA-SR now petitions this Court for review of both FLRA orders, arguing that the FLRA failed to defer to the arbitrator's factual findings, wrongly foreclosed arbitration regarding the FSIP-imposed provision and disregarded the parties' agreement to "execute" the CBA via both parties' signatures. The FLRA challenges our jurisdiction; additionally, it disagrees with FEA-SR on the merits.

---

[2] Chairman DuBester wrote separately to express his view that a party might be able to challenge certain "matters pertaining to an [FSIP] order" outside the Authority's *State of New York* non-compliance regime. *DOD II*, 73 F.L.R.A. at 153. In his view, Party B could skip the first step and lodge a direct ULP charge against Party A "alleging that agency action related to the Panel proceeding constituted an unfair labor practice." *Id.* Because *DOD I* had found that DDESS did not commit a ULP, however, the Chairman concurred in the decision. *Id.*

## II. ANALYSIS

### A. Jurisdiction

We have jurisdiction of an FLRA order reviewing an arbitrator's award only if the order "involves an unfair labor practice." 5 U.S.C. §§ 7122(a), 7123(a)(1). We interpret "involves" to require that a ULP be "discussed in some way in, or be some part of, the Authority's order" or "necessarily implicated by" the Authority's decision. *Overseas*, 824 F.2d at 65, 68.

Our court has found no ULP involvement—and therefore no jurisdiction—if a claim could be, but is not, framed as a statutory ULP. *See, e.g.*, *U.S. Dep't of Interior v. FLRA*, 26 F.3d 179, 184 (D.C. Cir. 1994) (no ULP involvement when union framed arguments as governed by contract law and did not cite Section 7116). Similarly, we lack jurisdiction if an arbitration award lists no ULP issues and the FLRA order includes "no discussion, mention or implication of an unfair labor practice." *AFGE Loc. 3690 v. FLRA*, 3 F.4th 384, 388 (D.C. Cir. 2021).

We have also found no ULP involvement if an arbitrator addresses a ULP but the Authority does not. In *AFGE, Local 2510 v. FLRA*, a union submitted a ULP charge to an arbitrator but the FLRA order addressed only an attorney's fee award. 453 F.3d 500, 504 (D.C. Cir. 2006). The FLRA order did not "involve" a ULP. *Id.* In another case, the union pressed contract and ULP claims but the arbitrator dismissed the ULP claim as not properly before her. *Ass'n of Civilian Techs., N.Y. State Council v. FLRA*, 507 F.3d 697, 698–99 (D.C. Cir. 2007). The FLRA upheld the arbitrator's decision but did not evaluate the ULP allegations; accordingly, the Court found no ULP involvement and dismissed the petition. *Id.* This precedent manifests that the "involves" test focuses on the FLRA's order,

not the arbitral award. *See Broad. Bd. of Governors Office of Cuba Broad. v. FLRA*, 752 F.3d 453, 457 (D.C. Cir. 2014) ("[I]t is the order of the FLRA that is the subject of the petition for judicial review, not the arbitrator's decision or the initial grievance." (alteration adopted) (quotation omitted)).

On the other hand, we have found the "involves" test satisfied in some circumstances. In *Overseas*, we exercised our jurisdiction to review an FLRA order that precluded an arbitrator's consideration of a ULP because the union had earlier raised the ULP charge before the FLRA. 824 F.2d at 70. The Authority's discussion of the union's arbitral grievance vis-à-vis the earlier ULP charge "abundantly suffice[d] to satisfy the relatively imprecise 'involves' standard," notwithstanding the FLRA did not address the ULP on the merits. *Id.* at 71. In *National Weather Service Employees Organization* (*NWSEO*), an arbitrator concluded that the agency had not unlawfully repudiated an earlier agreement in violation of Section 7116(a)(1) and (5). 71 F.L.R.A. 380, 382 (2019). On review, we held the "involves" test met because the Authority order explicitly addressed the unlawful repudiation ULP. *NWSEO v. FLRA*, 966 F.3d 875, 880 (D.C. Cir. 2020).

We believe the FLRA orders *sub judice* involve statutory ULPs. FEA-SR's claims were litigated as ULPs before the arbitrator. Both of FEA-SR's arbitral grievances alleged that DDESS committed ULPs. FEA-SR Grievance, SY 2018-2019 No. 19 (alleging that submission of an unexecuted agreement for agency head review violated the ground rules and constituted bad faith bargaining in violation of Section 7116(a)); FEA-SR Grievance, SY 2018-2019 No. 21 (alleging that DDESS's notice of the agreement's implementation repudiated the earlier CBA and constituted a ULP under Section 7116(a)). In post-hearing briefing, both parties again listed the ULP allegations as the main issues presented. DDESS

Post-Hearing Brief at *2–3 (whether DDESS violated Section 7116(a) by submitting the agreement for agency head review or by implementing the agreement); FEA-SR Post-Hearing Brief at *15–16 (whether DDESS violated Section 7116(a) by submitting an unexecuted draft agreement for agency head review or by repudiating the earlier agreement). The arbitrator ultimately concluded that DDESS failed to negotiate in good faith and committed ULPs when it ceased negotiating on unresolved provisions and submitted a partially unsigned agreement for agency head review. *In re Arb. between FEA-SR and DDESS*, FMCS Case No. 190227-04572, at *17–18 (2020).

The FLRA's orders "involve" a ULP under Section 7123(a) because they conclude that the basis of the arbitrator's ULP finding was contrary to law. First, the FLRA described the arbitral award as finding ULPs based on DDESS's cessation of negotiations, submission of an unexecuted agreement for agency head review and repudiation of the parties' 2005 CBA. *DOD I*, 72 F.L.R.A. at 601. Second, in Part B of the *DOD I* order, the FLRA addressed the arbitrator's ULP findings.[3] The FLRA determined that the FSIP had resolved all bargaining issues. *Id.* at 604. This determination directly overturned the arbitrator's finding that DDESS failed to continue negotiating an incomplete agreement. *See Arb. between FEA-SR and DDESS*, at *17–18. Next, the FLRA found the agreement "executed" when the FSIP issued its order. *DOD I*, 72 F.L.R.A. at 604–05. DDESS therefore submitted a fully executed agreement for agency head review in compliance with Section 7114(c). *Id.* at 605. In other words, the FLRA overturned the arbitrator's finding that DDESS committed a ULP by submitting an unexecuted agreement for

---

[3] We may review the entire FLRA order if at least one portion of the order involves a ULP. *NWSEO*, 966 F.3d at 879–80.

review. *See Arb. between FEA-SR and DDESS*, at \*17–18. The *DOD II* order declined to reconsider these conclusions. 73 F.L.R.A. at 152. Because the FLRA controverted the bases on which the arbitrator found a ULP, its orders "necessarily implicated" a statutory ULP and "suffice[d] to satisfy the relatively imprecise 'involves' standard." *Overseas*, 824 F.2d at 71; *cf. Nat'l Treasury Emps. Union v. FLRA*, 745 F.3d 1219, 1222 ("The [FLRA]'s reversal of the Arbitrator's unfair labor practice finding clearly involves an unfair labor practice.").

We review the FLRA orders in accordance with the Administrative Procedure Act. 5 U.S.C. § 7123(c); *see id.* § 706(2). In reviewing the FLRA's interpretation of the Statute, we ask whether the Congress "has directly spoken to the precise question at issue" and give "effect to [the Congress'] unambiguously expressed intent." *Nat'l Treasury Emps. Union v. FLRA* (*NTEU*), 754 F.3d 1031, 1041 (D.C. Cir. 2014) (quoting *Chevron USA Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)); *see SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018). We defer to the FLRA's reasonable interpretation only if the statute is silent or ambiguous. *NTEU*, 754 F.3d at 1041.

FEA-SR challenges the Authority's conclusions that (1) the arbitrator lacked authority to review the FSIP order under Section 7119 and (2) the agreement "executed" upon the FSIP's issuance of its order. Because the FLRA orders correctly interpret Sections 7119 and 7114, we deny FEA-SR's petition for review.

## B. Arbitrator's Review of FSIP Order—Section 7119

The FLRA correctly determined that the arbitrator lacked authority to review the FSIP order under Section 7119. The Statute's text, structure and history indicate the Congress' intent to insulate FSIP orders from direct review by an

arbitrator, the FLRA or a court. The Statute sets out a single procedure for reviewing the legality of an FSIP order: Party B can challenge an FSIP order as contrary to law only after Party A charges Party B with noncompliance with the order. Because we believe the Congress "has directly spoken to the question at issue," we give effect to its "unambiguously expressed intent." *NTEU*, 754 F.3d at 1041 (cleaned up).

We start with the text of Section 7119. The Statute established the FSIP to "investigate any impasse" presented to it, 5 U.S.C. § 7119(c)(5)(A), and instructed it to "take whatever action is necessary and not inconsistent with this chapter to resolve the impasse," *id.* § 7119(c)(5)(B)(iii). The FSIP's final action "*shall be binding* on such parties during the term of the agreement, unless the parties agree otherwise." *Id.* § 7119(c)(5)(C) (emphasis added). The Statute provides for no direct review of FSIP orders, whether by an arbitrator, the FLRA or a court. The Statute does include other review provisions: both the FLRA and an arbitrator can review ULP allegations (*id.* §§ 7116(d); 7118; 7121), the FLRA can review an arbitral award (*id.* § 7122(a)) and the court can review a final FLRA order (*id.* § 7123(a)). The absence of an FSIP review provision manifests the Congress' intent to restrict review. Review is limited to a ULP proceeding for noncompliance with impasse procedures and FSIP orders. *See id.* § 7116(a)(6) and (b)(6).[4] What legislative history there is reinforces the text. A House Committee Report clarifies that an FSIP order is binding and "not subject to appeal." H.R. REP. NO. 95-1403, at 54 (1978). That report envisioned only one avenue for review of

---

[4] According to Subsections 7116(a)(6) and (b)(6), an agency or labor organization commits a ULP by "fail[ing] or refus[ing] to cooperate in impasse procedures and impasse decisions as required by this chapter." A party charged with a non-compliance ULP can then challenge the FSIP order's legality as a defense. *State of New York*, 2 F.L.R.A. at 188.

an FSIP order: that is, as a defense to a ULP charge for failure to comply with an FSIP order. *Id.*; *see* 5 U.S.C. § 7116(a)(6) and (b)(6); *State of New York*, 2 F.L.R.A. at 188.

We long ago acknowledged the lack of judicial review of FSIP orders. In *Brewer*, we reviewed the statutory text, structure and legislative history before concluding that the Congress could not have provided "[a] clearer suggestion" that it "intended no appeal from Panel decisions." 735 F.2d at 1500. Instead, *Brewer* noted the availability of review of an FSIP order only when reviewing a ULP charge for noncompliance with a Panel order. *Id.* (citing *AFGE, Locs. 225, 1504, and 3723*, 712 F.2d at 641 n.4; *Dep't of Treasury v. FLRA*, 707 F.2d 574, 577 n.7 (D.C. Cir. 1983) (explaining that an FSIP decision can be reviewed "first before the Authority, then in court, in an unfair labor practice proceeding")). The FLRA itself abjured any power to review an FISP order directly, explaining that the Congress established the "unfair labor practice procedure as the exclusive means of obtaining" Authority review of an FSIP order. *State of New York*, 2 F.L.R.A. at 188.

In its second arbitral grievance, FEA-SR declined to execute the FSIP-imposed agreement until both parties signed it and "resolved the dispute over FSIP's jurisdiction." FEA-SR Grievance, SY 2018-2019 No. 21. Its declination arguably constituted a ULP by not complying with an impasse decision under Section 7116(b)(6). If DDESS had lodged a ULP charge, FEA-SR could have defended itself by arguing that the FSIP order was contrary to law. *See Headquarters, Nat'l Guard Bureau Washington, D.C.*, 54 F.L.R.A. 316, 323–25 (1998); *NTEU*, 61 F.L.R.A. 729, 732 (2006). Indeed, FEA-SR expected DDESS to file a ULP charge against it on this ground. J.A. 136. But DDESS did not do so and thus FEA-SR had no opportunity to challenge the validity of the FSIP order under the *State of New York/Brewer* regime. *DOD II*, 73 F.L.R.A. at 151.

Relying on several district court decisions holding that a union *might* bring a collateral challenge to an FSIP order—for example, a challenge under the Appointments Clause of the Constitution—FEA-SR proposes expanding the *State of New York/Brewer* regime. *See Nat'l Veterans Affs. Council v. FSIP* (*NVAC*), 552 F. Supp. 3d 21, 30 (D.D.C. 2021); *Ass'n of Admin. L. Judges v. FSIP* (*AALJ*), 2021 WL 1999547, at *7 (D.D.C. May 19, 2021). According to FEA-SR, it can bypass the *State of New York/Brewer* regime by lodging a ULP charge against DDESS and bootstrapping a challenge to the FSIP order's legality—attacking its jurisdiction or the order's merits. FEA-SR's challenge to the FSIP order is not collateral, but direct. Its second grievance expressly raises the "dispute over FSIP's jurisdiction." FEA-SR Grievance, SY 2018-2019 No. 21. FEA-SR's post-hearing briefing alleges that the FSIP exceeded its jurisdiction by adopting DDESS's proposed Article 18, Section 3(f). FEA-SR Post-Hearing Brief at *39–44. *NVAC* and *AALJ did* endorse the availability of collateral challenges to the constitutionality of the FSIP members' appointments. *See NVAC*, 552 F. Supp. 3d at 30; *AALJ*, 2021 WL 1999547, at *7. Moreover, the district court merely surmised that a union could lodge a ULP charge against an agency and then bootstrap that charge into a reviewable challenge to an FSIP order. *See NVAC*, 552 F. Supp. 3d at 30 ("[T]he Union likely can bring an unfair labor practice charge against the VA."). We decline FEA-SR's invitation to expand *Brewer* in this manner.[5]

---

[5] *Brewer* itself casts doubt on the bootstrapping theory. There, we described a ULP charge of noncompliance with an FSIP order as the "*exclusive* means for assuring judicial review of Panel orders." *Brewer*, 735 F.2d at 1502 n.9 (emphasis added). Because this case presents a direct challenge to an FSIP order, we do not address the correctness of the collateral challenges endorsed by *NVAC* and *AALJ*.

FEA-SR raises a policy concern about the asymmetry of the *State of New York/Brewer* scheme: a union can always charge an agency for failure to comply with an FSIP order but, if a union fails to comply, the agency can simply execute the agreement without it. An agency has little incentive to lodge a noncompliance ULP charge because doing so would give a union the opportunity to challenge the FSIP order's legality.[6] *See DOD II*, 73 F.L.R.A. at 150. Federal employee unions cannot strike or withhold labor so the union has no recourse.[7] *See* 5 U.S.C. § 7120. As *Brewer* recognized, the union's decision to violate a labor contract "is not to be taken lightly" and reliance on a ULP proceeding as the exclusive method to obtain review of an FSIP order comes with significant drawbacks. *Brewer*, 735 F.2d at 1502 n.9. But "[p]erhaps Congress wished to pay this price in return for swift and final Panel authority." *Id.* We agree with *Brewer* that the asymmetry argument should be directed to the Congress. *Id.*

## C. Execution of FSIP Order—Section 7114(c)

The Statute gives an agency "30 days from the date the agreement is executed" to approve or disapprove an agreement. 5 U.S.C. § 7114(c)(2). If the agency does not complete review within 30 days, the agreement "shall take effect and shall be binding." *Id.* § 7114(c)(3). The dispute here involves when "execution" of the CBA between FEA-SR and DDESS occurred. Statutory text offers little guidance on the timing of

---

[6] The asymmetry point may make sense in theory but in practice agencies *have* brought ULP charges against unions for noncompliance with FSIP orders. *See, e.g.*, *AFGE, Loc. 1815*, 69 F.L.R.A. 309, 314 (2016); *AFGE, Loc. 3732*, 16 F.L.R.A. 318, 330 (1984).

[7] If a federal union withholds labor, the FLRA can decertify the union and invoke other severe penalties. *See Pro. Air Traffic Controllers Org.*, 7 F.L.R.A. 34, 38–39 (1981); 5 U.S.C. § 7120.

execution and we therefore consider whether the FLRA reasonably interpreted the Statute. *NTEU*, 754 F.3d at 1042. We believe that the Authority's interpretation of "executed"— occurring when no further action is needed—gives a reasonable construction. *See DOD I*, 72 F.L.R.A. at 604–05; *NTEU*, 754 F.3d at 1041. We therefore uphold the Authority's interpretation and conclude that DDESS's submission of the executed agreement for agency head review did not repudiate the 2005 CBA or "violate[] the Statute." *DOD I*, 72 F.L.R.A. at 604–05.

Ordinarily, an agreement is executed on the "the date the local parties signed it." *AFGE, Loc. 1815*, 69 F.L.R.A. 309, 319 (2016). But FEA-SR did not sign the agreement. FLRA decisions have found an agreement executed if there is "no further action . . . necessary to finalize a complete agreement." *Pat. Office Pro. Ass'n*, 41 F.L.R.A. 795, 803 (1991). Impasse arbitration and FSIP orders often resolve all outstanding issues and thus leave the parties with no further action needed. If an arbitration award resolves all outstanding issues at impasse, the FLRA has found the agreement executed. *Panama Canal Comm'n*, 36 F.L.R.A. 555, 562 (1990). A separate execution requirement would constitute a "meaningless formality." *Id.* Similarly, an FSIP order executed an agreement on the date of issuance because the parties needed to take no further steps. *See AFGE Nat'l Veterans Affs. Council*, 39 F.L.R.A. 1055, 1057 (1991). And when the parties reviewed a CBA for accuracy after the arbitrator's resolution of all outstanding issues, the Authority nonetheless found the agreement executed on the date the arbitrator issued his decision. *AFGE, Loc. 1815*, 69 F.L.R.A. at 320.

The FLRA has delayed the execution date only if a party must take further action to finalize an agreement after impasse proceedings. In *National Treasury Employees Union* (*NTEU*),

an arbitrator appointed by the FSIP resolved six articles. 39 F.L.R.A. 848, 849 (1991). The parties subsequently held discussions and continued negotiations on other unresolved articles. *Id.* The FLRA concluded this activity constituted further action necessary to finalize the agreement so that the issuance of the arbitrator's decision did not trigger execution. *Id.* The Authority distinguished the *NTEU* arbitrator's partial decision from the *Panama Canal Commission* arbitrator's comprehensive decision resolving all outstanding issues. *Id*.

If the Authority's interpretation of "executed" were otherwise, a party could distort the impasse procedure by "holding out its execution of the CBA in order to extract concessions it had already signed away" during negotiations. *AFGE, Loc. 1815*, 69 F.L.R.A. at 320. Under the Authority's interpretation, a party cannot unilaterally impede execution of a finalized, FSIP-imposed agreement by refusing to sign. Here, the Authority reasonably concluded that the FSIP order executed the DDESS–FEA-SR agreement by resolving all outstanding issues, consonant with *Panama Canal Commission*, 36 F.L.R.A. at 562, and *AFGE National Veterans Affairs Council*, 39 F.L.R.A. at 1057. *DOD I*, 72 F.L.R.A. at 604. The parties submitted 10 outstanding issues and the FSIP resolved all of them. *DOD I*, 72 F.L.R.A. at 604. FEA-SR argues that the parties did not resolve Article 22 but they disagreed only on the phrasing of four words. *Id.* The brief discussion of Article 22's phrasing falls far short of the substantive negotiations on unresolved articles that extended the execution date in *NTEU*. *See* 39 F.L.R.A. at 849. The FSIP also resolved Article 18 and, as a result, FEA-SR could not reopen Article 18, Section 1(a) under the parties' ground rules. *DOD I*, 72 F.L.R.A. at 604. Because the parties needed to take no further action, the agreement executed on December 14, 2018—the date the FSIP issued its order. *See Pat. Office Pro. Ass'n*, 41 F.L.R.A. at 803. Approval of the agreement via the

agency head review process on January 11, 2019 complied with Section 7114(c) and did not repudiate the 2005 CBA. *DOD I*, 72 F.L.R.A. at 604. The Authority's reasonable interpretation of Section 7114(c) prevents FEA-SR from forestalling execution of a finalized agreement by refusing to sign. *See AFGE, Loc. 1815*, 69 F.L.R.A. at 320.

For the foregoing reasons, the petition for review is denied.

*So ordered.*